UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CORIELLE JOHNSON, | Case No. 09-10910 |
| Plaintiff, | Arthur J. Tarnow |
| vs. | United States District Judge |
| PATRICIA CARUSO, *et al.*, | Michael Hluchaniuk |
| Defendants. | United States Magistrate Judge |

**REPORT AND RECOMMENDATION**
**MOTIONS FOR SUMMARY JUDGMENT (Dkt. 53, 62)**

**I.    PROCEDURAL HISTORY**

Plaintiff filed this prisoner civil rights action on March 11, 2009. (Dkt. 1). This case was referred to the undersigned on June 20, 2010 for all pretrial proceedings. (Dkt. 13). Defendants filed a motion for summary judgment on May 5, 2011. (Dkt. 53).[1] Plaintiff filed responses on July 25, 2011 and July 29, 2011. (Dkt. 63, 65). No replies have been filed. This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions for summary judgment be **GRANTED**.

---

[1] Later served defendant Glenn Caron filed a separate motion for summary judgment on essentially the same grounds as those identified in the initial motion. (Dkt. 62).

## II.     FACTUAL BACKGROUND

It appears from plaintiff's complaint that he alleges violations of procedural due process, and First Amendment violations involving interference with his access to mail and access to the courts.  As to his access to courts claim, while plaintiff's complaint vaguely refers to "pending habeas corpus proceedings and child support matters" (Dkt. 1, Pg ID 5), he goes on say that he "sought to properly file a 'financing statement' to secure his interest in any of his debtors/debtor's property from the Saginaw County court clerk."  (Dkt. 1, Pg ID 6).  He also indicates that the confiscation of one of the mail packages denied him the ability to have his § 1983 claims adjudicated.  (Dkt. 1, Pg ID 6-8).  This was done, plaintiff asserts, by defendant Potila.  *Id*.  Plaintiff acknowledges, however, that the mailings at issue were related to the UCC and asserts they were improperly confiscated in violation of a federal injunction.  (Dkt. 1, Pg ID 9) (*See also* Pg ID 15) (Defendants "conspired in taking property involving uniform commercial code material...").

The events stated in plaintiff's complaint begin in May of 2007.  On May 11, 2007, plaintiff claims he received by mail, "copies of his commercial agreements" that were rejected by defendant Berry.  Close to the same time, plaintiff claims that he received a book entitled "Redemption Manual 4th Edition," which was also rejected.  According to plaintiff, on May 21, 2007, a hearing was

conducted on the mail rejections. He also claims that, at that time, an injunction was in place prohibiting the "taking of 'UCC' Uniform Commercial Code materials issues by this court's Judge Denise Page Hood." The Complaint indicates that defendant Krajnik denied plaintiff access to the material after consulting defendant Killough.

On May 1, 2008, plaintiff claims he received the book "Administrative Claim for damages" that was rejected. On June 4, 2008, plaintiff claims that he again sent for his "commercial agreements" from the Secretary of State, which were also rejected. On November 7, 2008, plaintiff claims that he attempted to mail a letter requesting information to the Saginaw County Clerk, which was opened by Inspector Christopher Accord and rejected. According to plaintiff, defendant Potila informed plaintiff that defendant Warden Birkett directed Potila to read all of plaintiff's legal mail to the Courts. As a result, plaintiff claims that defendant Potila refused to send a complaint because it had UCC contents written on it. He claims that the same complaint was confiscated by Inspector Accord on November 15, 2008 after a subsequent attempt to mail it.

Plaintiff was transferred to MBP in November of 2008. At that point, he claims that he began questioning staff about the Complaint and other UCC material confiscated at SMF. According to plaintiff, "on 2-18-2009 plaintiff filed grievance which was rejected exhausting remedy." Plaintiff claims that on January 31, 2009,

defendant Kevern restricted plaintiff's correspondence with the Saginaw County Courthouse. He acknowledges being informed that a Saginaw County judge requested that all communication from plaintiff be halted. Plaintiff again claims that he filed a grievance on the issue and "on 2-17-2009 grievance was rejected exhausting remedy."

With regard to all of the "UCC property" plaintiff claims was confiscated, he asserts that he "sought the knowledge in said books & UCC blank forms" and was seeking to "properly file a 'financing statement' to secure his interest in any of his debtors property from the Saginaw's (sic) County Court Clerk." He claims that denial of the materials has violated his First Amendment rights. In addition to the UCC claim, Johnson also claims that preventing his communication with the Saginaw County Court has denied his access to the courts and MDOC's denial of a hearing regarding his property violates his due process rights.

### III. ANALYSIS AND CONCLUSIONS

    A.    <u>Standard of Review</u>

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining

whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).[2]

---

[2] Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Johnson v. Memphis City*

B.  First Amendment - Access to Courts

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Significantly, "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (*en banc*). To state a claim for unconstitutional denial of access to courts, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). Further, an inmate must make a specific claim that he was adversely affected or that the litigation was

---

*Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988). According to the Advisory Comments to the recent amendments, this specific requirement was omitted because as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record. *Comments*, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself. *Id*. ("The standard for granting summary judgment remains unchanged.").

prejudiced. *Johns v. MDOC*, 2008 WL 4712360, *5 (W.D. Mich. 2008), citing *Vandiver v. Niemi*, 1994 WL 677685, at *1 (6th Cir. 1994). Courts in this circuit have held that an inmate cannot show injury when he fails to state that he cannot replicate the confiscated documents. *Johns*, at *5, citing *Vandiver*, at *1.

Plaintiff's claims are similar to those asserted, and rejected, in *Hudson v. Caruso*, 2007 WL 2363308 (W.D. Mich. 2007)[3] (internal citations omitted):

> Plaintiff claims only that he was attempting to order "some legal material pertaining to the UCC." Plaintiff describes the document seized on November 14, 2004, as "a letter to the clerk of the court, 3rd Judicial Circuit Court in which plaintiff requested specific delegations of congressional authority pertaining to U.S. incorporation and commercial claims with federal statutes over an ENS Legis etc in order to begin the litigation aspect of the procedure." And, on November 22, 2004, Plaintiff claims that the following property was seized: "security agreements, hold harmless indemnity agreements, private agreements, default letter to the director P. Caruso, and at least 50 pages of information ...." .

District Judge Gordon Quist concluded, in *Hudson*, that the plaintiff "does not allege, nor can this Court discern, how the seizure of those documents resulted in actual injury to a non-frivolous criminal appeal, habeas corpus application, or civil rights claim." *Id*.

---

[3] While this case was decided before the Sixth Circuit determined that ¶ 23(HH) Policy Directive 05.03.118 was unconstitutional in *Jones*, its reasoning has been adopted by other courts in applying other provisions of PD 05.03.118, which the Sixth Circuit approved in *Jones*.

While plaintiff makes some vague references to a habeas corpus petition and some other litigation pending in the federal district court, he does not identify in his complaint or in either response to the summary judgment motions, any criminal appeal, habeas corpus petition, or civil rights claim with which defendants allegedly interfered. Thus, his claim for denial of access to the courts must fail. *Gulley v. Caruso*, 2012 WL 32118, *4-5 (W.D. Mich 2012) (To state a viable claim for interference with access to the courts, a plaintiff must show actual injury to a pending or contemplated litigation, which includes only a direct criminal appeal, a habeas corpus action, or a civil rights action.). And, to the extent that plaintiff claims the confiscated UCC materials relate to any such action, such a claim has repeatedly been held frivolous by the courts. *See Hudson, supra*; *see also Clark v. Caruso*, 2010 WL 746417, *6 (E.D. Mich. 2010) (Courts have repeatedly held that the UCC has no bearing on a prisoner's conviction or subsequent incarceration and such claims are frivolous) (citing cases).

    C.    First Amendment - Interference with Mail

Plaintiff contends that the confiscation of his UCC materials violated his right to free speech and communication under the First Amendment. The Supreme Court has recognized that prison inmates retain those First Amendment rights not incompatible with their status as prisoners. *Pell v. Procunier*, 417 U.S. 817, 832 (1974); *see also Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (construing

prior, broader version of MICH. DEP'T OF CORR., Policy Directive 05.03.118 ¶ HH(23) as unconstitutionally vague). The courts routinely have recognized that prisoners and their correspondents have a First Amendment interest in communication. *Jones*, 569 F.3d at 267, citing *Procunier v. Martinez*, 416 U.S. 396, 417 (1974). However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights ... ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Plaintiff relies heavily on the injunction issued in the *Jones* case enjoining enforcement of ¶ HH(23) of Policy Directive 05.03.118. However, as acknowledged in *Jones* and several other decisions, the MDOC can confiscate UCC materials under the narrower rules in PD 05.03.118 ¶ D(7) and PD 05.03.118 ¶ HH(3). *See e.g.*, *Clark v. Caruso*. Paragraph D(7) prohibits mail that is a "threat to the security, good order or discipline of the facility, may facilitate or encourage criminal activity or may interfere with the rehabilitation of the prisoner," including "[m]ail for the purpose of operating a business enterprise from within the facility." Paragraph HH(3) prohibits "mail advocating or promoting the violation of [a]

statute or federal laws." The *Jones* court concluded that the narrower rules were sufficient substitutes for ¶ HH(23), which it found unconstitutionally vague. As has been recognized in a number of cases, the MDOC most certainly has a legitimate penological purpose in preventing the filing of fraudulent liens and false financing statements, and thus its rule regarding UCC materials has been repeatedly held to be constitutional. *Rector v. Caruso*, 2011 WL 446149 (W.D. Mich. 2011) (citing cases). It is also well-established that safety and internal security are legitimate goals for prison administrators. *Id*. Here, according to the administrative hearing report, defendant confiscated approximately 37 pages of UCC materials sent to plaintiff. (Dkt. 53-3, Pg ID 320). According to the report, plaintiff stated "I have copy-righted my name, I took control of my name and became similar to foreign nation, like the United States of America Corporation and I am claiming by sovereignty. I could have easily used this against staff but I don't need to." *Id*. The confiscated material included The Redemption Manual, 4th Edition, and several blank UCC forms. While the hearing officer cited ¶ HH(23) to support the confiscation, in the view of the undersigned, the confiscation was appropriate under other provisions of the policy directive, as held by several other courts. The undersigned agrees that the "MDOC prisoner mail policy represents a rational means by which to achieve the legitimate goal of preventing prisoners from engaging in fraudulent and illegal behavior." *Id*. Thus, the undersigned finds

no merit to plaintiff's First Amendment/interference with mail claim.

        D.      <u>Procedural Due Process</u>

The Fourteenth Amendment provides, in part, that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *see also Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) ("Courts have long recognized that the Fourteenth Amendment requires that an individual who is deprived of an interest in liberty or property be given notice and a hearing."). Where a pre-deprivation hearing is impractical, a post-deprivation hearing may be constitutionally adequate. *Zinermon*, 494 U.S. at 128. Often, "a pre-deprivation hearing is impractical because of the prison's legitimate penological need to seize contraband immediately upon discovery." *Rector*, at *7, citing *Pearce v. Sapp*, 1999 WL 503568, at *2 (6th Cir. 1999). In *Rector*, the court concluded that despite the fact that the plaintiff did not receive either a pre- or post-deprivation hearing, due process was satisfied because he was able to seek relief through the prison grievance system and was given the option of having the confiscated materials sent out of the prison. *Id.* Here, plaintiff was provided with a post-deprivation hearing and was given the opportunity to have the materials sent

elsewhere. (Dkt. 53-3, Pg ID 320). Thus, his due process rights were satisfied.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 23, 2012                                s/Michael Hluchaniuk
                                                     Michael Hluchaniuk
                                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 23, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Joshua D. Marcum, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant: Corielle Johnson, ID# 324642, BARAGA CORRECTIONAL FACILITY, 13924 Wadaga Road, Baraga, MI 49908.

                                                     s/Tammy Hallwood
                                                     Case Manager
                                                     (810) 341-7887
                                                     tammy_hallwood@mied.uscourts.gov